John D. LAWRENCE, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 8371.

United States Court of Appeals
Tenth Circuit.

March 11, 1966.

Ronald S. Pred, Denver, Colo., for appellant.

John M. Imel, U. S. Atty., Tulsa, Okl., for appellee.

Before MURRAH, Chief Judge, and PICKETT and SETH, Circuit Judges.

SETH, Circuit Judge.

This is a direct appeal by the appellant from his conviction for the robbery of a bank in Picher, Oklahoma, in violation of 18 U.S.C.A. § 2113(a).

James Collins and Barbara Sandoval, who were jointly charged with appellant,

had entered pleas of guilty prior to the trial of appellant, and it appears from the record that the two participated in the actual robbery of the bank. Appellant was not present during the course of the commission of the crime, and the question relating to him is whether or not he was guilty in aiding, abetting, and counseling the commission of the crime.

At the trial of the appellant James Collins and Barbara Sandoval both testified, and it appears that both had made statements prior to the trial which were inconsistent with the testimony given by them during the course of the trial. The witness Sandoval had made a statement shortly after her arrest which did not implicate the appellant in the crime. She later gave a written statement to the same effect, but later made an additional statement contradicting her earlier statements and implicating appellant in the robbery. At the trial she testified the appellant had planned the robbery and otherwise implicated him.

As to the witness Collins, it appears that shortly after his arrest he gave a statement that appellant had no knowledge of the robbery and was not involved in it. Later during the course of the investigation he made a statement to an FBI agent to the effect that the statement made by the witness Sandoval which implicated the appellant was in fact correct. The witness Collins during the course of the trial testified that appellant was not involved in the robbery and had no knowledge of it.

During the course of the cross-examination of James Collins, who appeared as a witness for the defendant, the Government attorney read a statement made by the attorney for the witness Collins on behalf of the witness at the time he was sentenced upon his plea of guilty to the robbery in question. This statement of the attorney generally placed the blame for the crime upon the appellant, and referred to him as the one who influenced James Collins, and who planned the robbery.

The Government's case was based largely on the testimony of the witness Sandoval, and the fact that appellant had rented the car used in the robbery by James Collins and Barbara Sandoval. Appellant's prior association with the two was well established. The Government in its brief makes the statement that if the jury had believed the witness Collins, they would have been compelled to acquit the appellant.

The principal issue raised on the appeal relates to the use at the trial of the statement made by the attorney on behalf of the witness Collins at the previous sentencing of Collins. The trial judge initially permitted the statement to be read by way of impeachment of the witness only, and the jury was so clearly advised. The use of the statement was promptly objected to by the attorney for appellant, and a motion for mistrial was made. The court denied the motion and allowed the statement to be so used for the purpose of impeachment. There followed a brief redirect examination and a few questions on recross-examination. The court then asked the witness Collins whether he had said anything to his attorney before he made the statement on his behalf which would have led the attorney to state that appellant was involved in the crime. The witness responded, "I said nothing to lead him to believe that Lawrence was involved in any way." After several other questions, the court then held that the statement of the attorney would be stricken and the jury was admonished that it must not consider any of the transcript of the sentencing proceedings; that the jury should disregard anything read therefrom, and they would not otherwise consider it. The attorney for appellant renewed his motion for mistrial and it was overruled. He subsequently based his unsuccessful motion for a new trial on the same point. A further discussion was had and some brief proceedings took place. Following the convening of the court after the noon recess which followed, the record shows the following:

"THE COURT: Now ladies and gentlemen of the jury, before noon you heard some discussion and ob-

jections to certain testimony, namely the transcript of the hearing of this court of the defendant Collins who was on the witness stand, at the conclusion of which I did not allow the evidence to be admitted. Now I want to ask each of you as jurors, can you disassociate that on the ruling of The Court which The Court has ruled on now, can you disassociate any and all of that testimony that pertained to that transcript which The Court allowed in for impeachment purposes at the time and then disallowed, can you assure this court individually that you can disregard that entirely in arriving at your true and just verdict in this case based on the other evidence allowed in this case or will be allowed in this case in the court?

"(WHEREUPON ALL JURORS INDICATE, 'YES'.)

"THE COURT: Each of you say that you can and will not have any trouble in your mind disassociating that in this case?

"Very well. Let the record so show.

"You may continue."

Thus the record shows that the questions and answers relating to the transcript of the sentencing were stricken from the record, the jury was admonished by the court to disregard entirely such material, and the above quoted question was put to the jurors and answered.

■ We agree with the trial court that the use of the statement in question was improper. It was not expressly adopted by the witness at the time although he stated that his attorney had said " * * * everything that I could say in my behalf." It is not such a statement that would by silence be acquiesced in as there is no compulsion to respond to it. As indicated the trial court first admitted the testimony or evidence and then, when the details became apparent, struck the testimony with no objection thereto expressed by the Government. Our difference with the trial court is whether the error was effectively cured. Thus the issue presented on this appeal is whether or not an admonition to the jurors plus a response from them that they would follow the court's admonition is sufficient to render harmless the error in the admission of the evidence.

■ Evidence which improperly finds its way into a trial may be excluded without harmful effect upon a defendant by the act of the trial court in striking the testimony coupled with an admonition to the jury to disregard it. Holt v. United States, 94 F.2d 90 (10th Cir.); Maestas v. United States, 341 F.2d 493 (10th Cir.). There are, however, circumstances where such action by the trial court is not considered to be sufficiently effective to render the error harmless. This would include instances where the effect of the evidence is so strong despite an admonition to disregard it that it will necessarily interfere with the jury's impartial consideration of the other evidence properly admitted. In consideration of the situation before us, the action of the trial court is considered to be no more than an admonition to the jury. The subsequent questioning of the jurors elicited from them a verbal response that they would heed the admonition; however, it must be assumed, whether or not the jurors be so questioned, that they will make a conscientious effort to heed the admonition of the court to the same extent that is indicated by their response to the direct question in the case at bar.

The importance of the testimony of the witness Collins, which was attempted to be impeached by the use of the statement here in question, is apparent and is acknowledged by the Government, as indicated above. There was little testimony or evidence admitted during the course of the trial which would implicate the appellant other than the testimony and previous statements of the witnesses Collins and Sandoval. Thus the testimony here sought to be impeached was on a material issue in the trial, and its probative effect was significant.

In Marshall v. United States, 360 U.S. 310, 79 S.Ct. 1171, 3 L.Ed.2d 1250, the trial judge learned that several jurors during the trial had read newspaper articles which referred to prior convictions of the defendant, who did not take the stand. The judge questioned the jurors individually in his chambers, and asked those who had read the articles whether they would be influenced by the articles. The jurors answered that they would not be influenced, and when asked whether they felt any prejudice against the petitioner replied that they did not. The trial court found no prejudice and denied a motion for mistrial. The Supreme Court held that a new trial was required. The Court said that prejudice was almost certain to be as great when it reaches the jury through news accounts as it would be as part of the prosecution's evidence. The Court ordered a new trial and indicated that each such case must turn on its own facts.

In the case at bar the statement in question occupied a prominent part in the trial. The reading of the statement, the questioning of the witness as to it, the objections and rulings take some thirty pages in the record, and as indicated above, is the center of the issue as to appellant's participation in the crime. The statement in part says in referring to appellant that he was not at the scene of the crime and continues:

"* * * He didn't participate in it directly, although I am convinced the District Attorney and the F.B.I. have knowledge of the facts, as I have myself through hearsay, that this man was the author of the trouble that this young fellow finds himself in today. This second man, third defendant, Lawrence."

Also from the statement:

"I suppose we could present a good many, but the particular letter I have here is from their parish priest and he is said to be by him, 'A good practicing Catholic.' Now, Your Honor knows what that means. I know that, and I am confident that is what it was, that that was consistent with his whole background, until he came in contact with Lawrence and possibly with this woman and then he became a victim of their wiles, and the man that is really responsible for the whole ugly affair is not here although I suppose in due course he will be here."

The contents of the statment are so damaging to appellant on a crucial issue that it must be held that the error was not cured by the trial court's admonition. The motion for new trial should have been granted. The trial court during the testimony recognized the seriousness of the problem created by the use of the statement, and took steps to correct it by way of admonition and questioning of the jurors, but this was not enough. The matter had become so important and so much an issue that nothing could be done to effectively remove it from the jurors' consideration. Obviously the jurors were acting in entire good faith in answering the court's questions, but, as in other instances of prejudicial evidence where admonitions are given, the effect is too strong to expect anyone to erase it from their mind despite their conscientious intention and purpose to do so. This was so held in Throckmorton v. Holt, 180 U.S. 552, 21 S.Ct. 474, 45 L.Ed. 663; Maestas v. United States, 341 F.2d 493 (10th Cir.); United States v. De Dominicis, 332 F.2d 207 (2d Cir.); United States v. Jacangelo, 281 F.2d 574 (3d Cir.); Arpan v. United States, 260 F.2d 649 (8th Cir.); Helton v. United States, 221 F.2d 338 (5th Cir.); United States v. Sansone, 206 F.2d 86 (2d Cir.).

There is no question that the discretion of the trial court is exercised in ruling on motions for mistrial, and a clear departure therefrom must be apparent before an appellate court will reverse. Webb v. United States, 191 F.2d 512 (10th Cir.); Woodland v. United States, 347 F.2d 956 (10th Cir.). However, we must hold that the trial court was in error. The error tested against the standards set forth in the oft cited case of Kotteakos v. United States, 328

U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557, must be said to have had a "substantial influence" or at least we are left in "grave doubt" and hence the conviction cannot stand.

The appellant also urges that the indictment is defective in that it does not fairly apprise him of the charges. The indictment is of Barbara Sandoval, James Collins, and appellant jointly for the crime of bank robbery. Appellant was thus charged as a principal, and he could be found guilty of the offense through aiding and abetting. Von Patzoll v. United States, 163 F.2d 216 (10th Cir.); Colosacco v. United States, 196 F.2d 165 (10th Cir.); 18 U.S.C.A. § 2. We find the indictment to be adequate to apprise appellant of the charges against him.

Reversed with directions to grant a new trial.